IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ROBERT POSWALK, et al., § | |
| § | |
| Plaintiffs, § | |
| § | Civil Action No. 3:11-CV-0465-D |
| VS. § | |
| § | |
| GMAC MORTGAGE, LLC, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

In this removed diversity case arising from judicial foreclosure proceedings on the residence of plaintiffs Robert Poswalk ("Robert") and Elizabeth M. Poswalk, defendant GMAC Mortgage, LLC ("GMAC") moves for summary judgment. For the reasons that follow, the court grants the motion.

I

In 2009 plaintiffs obtained a home equity loan on their residence. Robert executed a Texas Home Equity Note ("Note") in the original principal amount of $108,000.[1] Plaintiffs concurrently executed a Texas Home Equity Security Instrument ("Security Instrument") granting a lien on their home. Robert also executed a series of documents, including (1) HUD-1 Settlement Statement, (2) Acknowledgment as To Fair Market Value of Homestead

---

[1] In recounting the factual background, the court summarizes the evidence in the light most favorable to plaintiffs as the summary judgment nonmovants and draws all reasonable inferences in their favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

Property ("FMV Acknowledgment"), (3) Texas Home Equity Affidavit and Agreement, (4) Voluntary Repayment of Debt ("Voluntary Repayment"), and (5) Texas Client Acknowledgment ("Client Acknowledgment"). In 2010 plaintiffs defaulted under the terms of the note, and GMAC, the servicer of the loan, commenced judicial foreclosure proceedings on their residence.

Plaintiffs filed this suit against GMAC in state court. They allege that, pursuant to Tex. Const. Ann. art. XVI, § 50(a)(6)(Q)(x), GMAC forfeited all principal and interest of the home equity loan because the loan violated certain provisions of the Texas Constitution regarding home equity loans, *see* Tex. Const. Ann. art. XVI, § 50(a)(6), and that GMAC failed to correct these violations within 60 days of notification. Plaintiffs assert the following three violations: (1) the principal balance of the loan was greater than 80% of the home's fair market value, *see* § 50(a)(6)(B); (2) the fees for the loan exceeded 3% of the loan amount, *see* § 50(a)(6)(E), and (3) plaintiffs were required to apply the loan proceeds to repay debt other than debt secured by the homestead, *see* § 50(a)(6)(Q)(i). Plaintiffs seek a declaratory judgment in accordance with § 50(a)(6)(Q)(x), damages, and attorney's fees.

GMAC moves for summary judgment on all claims. Plaintiffs oppose this motion.[2]

---

[2]When GMAC filed its reply brief, it also submitted an exhibit. Because GMAC did not first obtain leave of court to file an appendix (a necessary requirement for submitting the exhibit), the court has not considered the exhibit in deciding the summary judgment motion. *See Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 104 (N.D. Tex. 2001) (Fitzwater, J.) (holding that party may not file summary judgment reply appendix without first obtaining leave of court).

II

Because GMAC is moving for summary judgment on claims as to which plaintiffs will bear the burden of proof at trial,[3] it can obtain summary judgment as to the claim in question by pointing the court to the absence of evidence on any essential element of the claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, plaintiffs must go beyond their pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for plaintiffs on the claim in question. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Plaintiffs' failure to produce proof as to any essential element of the claim renders all other facts regarding that claim immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment for GMAC is mandatory as to the claim in question if plaintiffs fail to meet this burden. *Little*, 37 F.3d at 1076.[4]

---

[3] Plaintiffs have the burden of establishing that the constitutional violations regarding home equity loans occurred. *See In re Chambers*, 419 B.R. 652, 671 (Bankr. E.D. Tex. 2009) (citing *Wilson v. Aames Capital Corp.*, 2007 WL 3072054, at *1 (Tex. App. Oct. 23, 2007, no pet.) (mem. op.) (rejecting contention that home equity lender had burden of proof to demonstrate it satisfied § 50(a)(6)(A)-(Q)).

[4] GMAC also asserts the affirmative defense of quasi-estoppel. *See, e.g., Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 640 (5th Cir. 2007) (noting that quasi-estoppel is an affirmative defense) (citing *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176 S.W.3d 80, 88 n.5 (Tex. App. 2004, no pet.)). When a party moves for summary judgment on a defense for which it will bear the burden of proof at trial, the moving party "must establish 'beyond peradventure all of the essential elements of the . . . defense.'" *Bank One, Tex., N.A. v.*

III

Plaintiffs allege that the home equity loan violates § 50(a)(6)(B) because the loan was greater than 80% of the home's fair market value. Section 50(a)(6)(B) provides that a Texas homestead is

> protected from forced sale . . . except for . . . an extension of credit that . . . is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made.

*Id.*; *see also Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 837 (Tex. App. 2008, no pet.) (quoting § 50(a)(6)(B)).

GMAC contends that the amount loaned to plaintiffs did not exceed 80% of the home's fair market value. It posits that, according to an appraisal (the "Forsythe Appraisal") prepared by Forsythe Appraisals, LLC ("Forsythe Appraisals"), the fair market value was $135,000, and, according to the Note and Security Instrument, the loan was authorized for 80% of the fair market value: $108,000. GMAC also maintains that, under § 50(h), it can conclusively rely on the appraisal by Forsythe Appraisals for the fair market value. Section 50(h) states:

---

*Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Because the court is dismissing plaintiffs' claims on other grounds, it need not reach the affirmative defense of quasi-estoppel.

> [a] lender or assignee for value may conclusively rely on the written acknowledgment as to the fair market value of the homestead property made in accordance with Subsection (a)(6)(Q)(ix) of this section if:
>
> (1) the value acknowledged to is the value estimate in an appraisal or evaluation prepared in accordance with a state or federal requirement applicable to an extension of credit under Subsection (a)(6); and
>
> (2) the lender or assignee does not have actual knowledge at the time of the payment of value or advance of funds by the lender or assignee that the fair market value stated in the written acknowledgment was incorrect.

§ 50(h). GMAC argues that the requirements in § 50(h) are satisfied because (1) the Forsythe Appraisal was prepared in accordance with a state or federal requirement applicable to an extension of credit under § 50(a)(6) and plaintiffs have not produced any evidence otherwise, and (2) the parties signed the FMV Acknowledgment, which recognized that the fair market value of the residence was $135,000 and stated that neither party had any "knowledge, or reason to believe, that the fair market value of the Homestead Property stated in this written acknowledgment is incorrect." D. App. 35.

Plaintiffs do not dispute that Robert signed the FMV Acknowledgment. Instead, they maintain that "[t]here is a disputed issue of material fact regarding the market value of the property" because the tax appraisal by the Dallas Central Appraisal District[5] (the "DCAD Tax Appraisal") appraised the residence in 2009 as having a fair market value of $122,060.

---

[5] Although plaintiffs identify this entity as the "Dallas County Appraisal District" and GMAC identifies it as the "Dallas County Tax District," it appears that the correct name is "Dallas Central Appraisal District."

Ps. Br. 3. Plaintiffs also contend that GMAC cannot rely on the Forsythe Appraisal because, under §50(h)(2), GMAC had knowledge of the DCAD Tax Appraisal.

Assuming *arguendo* that the court can rely on the DCAD Tax Appraisal (which was not submitted in evidence), this argument has been previously rejected. In *Penrod v. Bank of New York Mellon*, 824 F.Supp.2d 754 (S.D. Tex. 2011), the court held that an appraisal from a public appraisal district was "relevant to valuation for taxation purposes only," and that "[i]t does not establish market value." *Id.* at 760; *see also Hous. Lighting & Power Co. v. Fisher*, 559 S.W.2d 682, 686 (Tex. Civ. App. 1977, writ ref'd n.r.e.) ("[I]t is generally held that the value placed upon real property for the purposes of taxation by assessment without participation of the landowner is not evidence of its value for purposes other than taxation.") (citing cases).

Accordingly, the court grants summary judgment dismissing plaintiffs' claim under § 50(a)(6)(B).[6]

## IV

Plaintiffs bring a claim under § 50(a)(6)(E), alleging that the fees on the loan exceeded 3% of the loan amount. Section 50(a)(6)(E) provides that a Texas homestead is

> protected from forced sale . . . except for. . . an extension of credit that . . . does not require the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or

---

[6]Because the court has decided this claim in GMAC's favor, it need not reach the argument that plaintiffs are precluded under quasi-estoppel from disputing the Forsythe Appraisal.

>     service the extension of credit that exceed, in the aggregate,
>     three percent of the original principal amount of the extension
>     of credit.

*Id.*; *see also Penrod*, 824 F.Supp.2d at 760 & n. 49 (quoting § 50(a)(6)(E)).

GMAC contends that, according to the HUD-1 Settlement Statement, plaintiffs were charged $3,240 in fees, which is exactly 3% of the $108,000 loan. GMAC posits that the fees included in the 3% fee limit are the following:

| Fee | Amount |
| --- | --- |
| Line 803: Appraisal Fee | $350.00 |
| Line 804: Credit Report | $5.57 |
| Line 807: Flood Life of Loan Coverage | $5.00 |
| Line 808: Flood Determination Fee | $10.50 |
| Line 809: Underwriting Fee | $115.00 |
| Line 810: Processing Fees | $13.93<br>$385.25 |
| Line 888: TSI Appraisal Services | $80.00 |
| Line 1101: Settlement/Closing Fee | $450.00 |
| Line 1108: Title Insurance | $815.00 |
| Line 1111: TX Title Insurance Guaranty | $5.00 |
| Line 1112: Tax/EPA Endorsements | $315.80 |
| Line 1113: Tax Certification Fee | $41.82 |
| Line 1201b: Recording Fee | $160.00 |
| Line 1301: Survey | $487.13 |
| **Total** | **$3,240.00** |

D. Br. 10; *see also* D. App. 33.  GMAC also asserts that the $2,295.00 loan discount fee (line 802), $214.50 charged for per diem interest (line 901), and $1,450.00 charged for homeowner insurance (line 903b) are excluded from the 3% fee limit.  *See* D. Br. 11-12; D. App. 33.

Plaintiffs contend that the loan discount fee should be included in calculating the 3% fee limit because, according to Robert's affidavit, he had requested a no-fee loan but was told that he did not qualify for it, and that the loan discount fee was a fee to originate the loan. *See* Ps. App. 2.  Plaintiffs posit that they were charged $5,035.00 in fees.  It is unclear, however, how plaintiffs arrive at this number.  Robert avers that this sum includes $500.00 in "POC" fees to Quicken Loans (lines 803, 804, 807, 808, 809, 810, and 1602) and $714.50 in interest (line 901).[7]  Even if the court includes the fees asserted by GMAC, this totals only $4,454.50.[8]

As discussed above, the parties dispute whether the loan discount fee, per diem interest, and "POC" fees should be included in the 3% fee limit.[9]  In *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781 (5th Cir. 2010), the Fifth Circuit addressed a split within the Texas intermediate courts regarding whether loan discount fees, which are also called discount

---

[7]Robert's affidavit states that he was charged $714.50 in interest.  The HUD-1 Settlement Statement, however, states that the interest totaled $214.50.  It is not necessary for the court to resolve this question.

[8]And if the court were to include the loan discount fee as a fee, it would total $6,749.50.

[9]Plaintiffs do not dispute that the homeowner insurance charges should not be included in the 3% fee limit.

- 8 -

points, are "interest" under § 50(a)(6)(E) and therefore excluded from the 3% fee limit. *See id.* at 794.[10] The Fifth Circuit made an *Erie* guess and held that the Texas Supreme Court would conclude "that the discount points involved in the [plaintiffs'] loan were interest that did not count against the 3% cap in § 50(a)(6)(E)." *Id.* at 794-96; *see also* 7 Tex. Admin. Code § 153.5(3) (2012) ("Charges an owner or an owner's spouse is required to pay that constitute interest under the law, for example per diem interest and *points*, are not fees subject to the three percent limitation.") (emphasis added). Likewise, this court holds that the loan discount fee should not be included in the 3% fee limit. And although Robert avers that he was told that the loan discount fee was "a fee to originate the loan," *see* Ps. App. 2, he also signed a Client Acknowledgment that stated, in relevant part:

> I acknowledge that I am electing to pay discount point(s) in order to obtain a lower interest rate. I acknowledge that I could have obtained a loan with fewer or no discount points but that the loan would have had a corresponding higher interest rate. I acknowledge that discount points are "interest" under Texas law. I understand that Texas law limits the amount of fees that a lender can charge me for this type of loan to 3%. Since

---

[10]On one hand, *Tarver v. Sebring Capital Credit Corp.*, 69 S.W.3d 708 (Tex. App. 2002, no pet.), "concluded that the plain language of § 50(a)(6)(E), as interpreted by reference to Texas statutes and administrative regulations, compelled the conclusion that points are not fees because they are not charged to originate, evaluate, maintain, record, insure, or service the extension of credit." *Cerda*, 612 F.3d at 795 (alterations and internal quotations omitted) (quoting *Tarver*, 69 S.W.3d at 712). And on the other, *Texas Bankers Ass'n v. Association of Community Organizations for Reform Now (ACORN)*, 303 S.W.3d 404 (Tex. App. 2010, no pet.), concluded that "'[g]iven the inherent differences between the consumer-protection mechanisms of the usury statutes, which require a broad definition of interest, and the protective purposes of the home equity fee cap, use of the usury definition of interest for purposes of the fee cap fails to preserve the legislative intent' of § 50(a)(6)(E)." *Cerda*, 612 F.3d at 795 (quoting *ACORN*, 303 S.W.3d at 410).

>           discount points are interest, I understand that they are excluded
>           from the 3% fee limit.

D. App. 46.

Plaintiffs cannot defeat summary judgment based on Robert's self-serving affidavit, given the contrary evidence. *See Penrod*, 824 F.Supp.2d at 761 (holding that because plaintiffs admitted signing a Discount Point Acknowledgment, in which they "acknowledge[d] that discount point(s) are 'interest' under Texas law and that, accordingly, they are excluded from the 3% limit on fees," the "document . . . demonstrates that the discount points are properly excluded from the three percent limit [and] [p]laintiffs' arguments lack factual support and are insufficient to defeat summary judgment"); *see also Byers v. Navarro Cnty.*, 2012 WL 677203, at *7 n.20 (N.D. Tex. Mar. 1, 2012) (Fitzwater, C.J.) (holding that self-serving statement was insufficient to create genuine fact issue, given plentiful contrary evidence) (citing *Smith v. Sw. Bell Tel. Co.*, 456 Fed. Appx. 489, 492 (5th Cir. 2012) (per curiam); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994) (per curiam)).

Regarding per diem interest, § 50(a)(6)(E) itself excludes interest from the 3% fee limit. *See id.* (prohibiting lender from charging fees, "in addition to any interest," that exceed 3% of the loan); *see also* 7 Tex. Admin. Code § 153.5(3) (2012) ("Charges an owner or an owner's spouse is required to pay that constitute interest under the law, for example *per diem interest* and points, are not fees subject to the three percent limitation.") (emphasis added). Although Robert maintains that interest is a fee necessary to originate the loan, plaintiffs do

not cite any authority demonstrating that the per diem interest should be categorized this way under § 50(a)(6)(E).  And merely stating that "[t]here is a disputed issue of material fact," Ps. Br. 4, is not sufficient for plaintiffs to meet their burden.  *See, e.g., Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) ("[U]nsubstantiated or conclusory assertions that a fact issue exists will not suffice.") (citing *Anderson*, 477 U.S. at 256).

The final issue relates to "POC" fees.  Robert avers that he paid an additional $500.00 as "POC" fees.  But a reasonable trier of fact could only find that the alleged $500.00 "POC" fee was already included in the calculation, as the following chart illustrates.

| Fee | Amount |
| --- | --- |
| Line 803: Appraisal Fee | $350.00 |
| Line 804: Credit Report | $5.57 |
| Line 807: Flood Life of Loan Coverage | $5.00 |
| Line 808: Flood Determination Fee | $10.50 |
| Line 809: Underwriting Fee | $115.00 |
| Line 810: Processing Fees | $13.93<br>$385.25 |
| **Total** | **$500.00** |

*See* D. App. 33.

Because plaintiffs have failed to create a genuine issue of material fact, the court holds that GMAC is entitled to summary judgment dismissing plaintiffs' claim under § 50(a)(6)(E).

V

Plaintiffs allege that GMAC violated § 50(a)(6)(Q)(i) by requiring that they apply the proceeds of their loan to repay debt other than the homestead debt.

"Section 50(a)(6) allows a home-equity lender to require the borrower to use loan proceeds to pay: (1) debts secured by the homestead; and (2) non-homestead debts to third-party creditors." *Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 356 (Tex. 2000) (citing § 50(a)(6)(Q)(i)); *see also Foster v. Bank One Tex. NA*, 54 Fed. Appx. 592, 2002 WL 31730405, at *4 (5th Cir. 2002) (per curiam) (same). GMAC moves for summary judgment on this claim on the basis that Robert admitted in his deposition that the loan proceeds were used to pay off two loans secured by the homestead and several third-party loans. GMAC also points to a Voluntary Repayment form that Robert signed, which states that the "Lender is not requiring me to repay any other debts except" "debt that is already secured by my homestead property or a debt to another lender." D. App. 44. Plaintiffs do not offer evidence that would enable a reasonable trier of fact to find in their favor in the face of this evidence. *See Little*, 37 F.3d at 1076.

Accordingly, the court holds that GMAC is entitled to summary judgment dismissing plaintiffs' claim under § 50(a)(6)(Q)(i).[11]

---

[11]Because the court is already granting GMAC's motion, it need not reach GMAC's argument that plaintiffs are estopped from disputing the Voluntary Repayment form under quasi-estoppel.

VI

Plaintiffs allege that, under § 50(a)(6)(Q)(x), GMAC forfeited all principal and interest owed on the loan because of GMAC's alleged violations and its failure to cure them. They also seek a declaratory judgment on this basis.

Under § 50(a)(6)(Q)(x), a "lender forfeits all principal and interest [owed on a loan] if it fails to comply with the constitutional requirements and fails to correct its noncompliance not later than the sixtieth day after the borrower notifies the lender of the violation." *Smith v. JPMorgan Chase Bank, Nat'l Ass'n*, 825 F.Supp.2d 859, 863 (S.D. Tex. 2011) (citing § 50(a)(6)(Q)(x)). "[A] void home equity lien may be made valid upon proper cure." *Id.*; *see also Doody v. Ameriquest Mortg. Co.*, 49 S.W.3d 342, 345-46 (Tex. 2001) (answering certified questions from Fifth Circuit) ("[W]e conclude that section 50(a)(6)(Q)(x) is a cure provision that applies to all of section 50(a) and is not limited to protecting the loan's principal and interest. Rather, this provision also operates as a cure provision that validates a lien securing a section 50(a)(6) extension of credit."). Because the court has dismissed plaintiffs' asserted constitutional violations, which are predicates for this claim, plaintiffs' claim under § 50(a)(6)(Q)(x) also fails. *See Penrod*, 824 F.Supp.2d at 764 (holding that because court dismissed alleged violations of Texas Home Equity Amendment, plaintiffs' argument that defendant failed to cure also lacked merit). The court also declines, in its discretion, to address plaintiffs' request for a declaratory judgment because it has

dismissed all of plaintiffs' claims.[12]

* * *

For the reasons explained, the court grants GMAC's January 24, 2012 motion for summary judgment and dismisses the suit with prejudice by judgment filed today.

**SO ORDERED.**

June 15, 2012.

                                        SIDNEY A. FITZWATER
                                        CHIEF JUDGE

---

[12]The Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, does not create a substantive cause of action. *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("The federal Declaratory Judgment Act . . . is procedural only[.]") (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). A declaratory judgment action is merely a vehicle that allows a party to obtain "an early adjudication of an actual controversy" arising under other substantive law. *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990). Federal courts have broad discretion to grant or refuse declaratory judgment. *See, e.g., Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the [DJA] has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The DJA is "an authorization, not a command." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). It gives federal courts the competence to declare rights, but it does not impose a duty to do so. *Id.* (collecting cases).